IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|                       |   |                              |
|-----------------------|---|------------------------------|
|                       | : |                              |
| VERNON ADDISON        | : |                              |
| v.                    | : | Civil Action No. DKC 13-0846 |
|                       | : |                              |
| DEPT. OF THE NAVY     | : |                              |
|                       | : |                              |

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this employment discrimination case is the motion to dismiss or, alternatively, for summary judgment filed by Defendant Department of the Navy, Bureau of Medicine ("Defendant" or "the Navy"). (ECF No. 16). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion will be granted.

**I.  Background**

The thorny procedural history in this case has been set forth in prior orders, but will be discussed here for clarity purposes. From 1995 until his termination in December 2010, Plaintiff worked as a computer operator in the Operations Division, Operations and Network Support Department with the National Naval Medical Center. Plaintiff, proceeding *pro se*, filed the instant lawsuit on March 20, 2013, against the Department of the Navy, Bureau of Medicine. The complaint

alleges that Plaintiff was discriminated against based on national origin under Title VII of the Civil Rights Act of 1964, and includes as the only "supporting facts" that "[t]he cause and/or source of past situations at work 1995-2010." (ECF No. 1, at 2). Plaintiff asserted that he filed administrative charges with the Equal Employment Opportunity Commission ("EEOC") from 1998 to 2010. (*Id.* at 3). He sought full retirement benefits, back pay, reinstatement to his former position, and $20,000,000 in monetary damages. (*Id.* at 3-4).

Plaintiff filed another action on March 20, 2013 against the same Defendant, seeking to appeal a decision of an Administrative Law Judge ("ALJ") with regard to lost wages, termination of job, and assault. *See Addison v. Dep't of Navy*, Civil Action No. DKC 13-856 (D.Md.). He stated in this complaint that he suffered continued assaults and retaliation by co-workers and managers and alleged that the staff was instructed to do so by human resource personnel. (*Id.* at ECF No. 1, at 2). Plaintiff alleged that he was assigned harder, new procedures to complete, his schedule was changed, he was given false write-ups, he was assaulted by several co-workers, and he was stripped of his work station. (*Id.*). He again sought lost wages, $20,000,000 in monetary damages, and other miscellaneous relief. (*Id.* at 3).

On April 1, 2013, the court consolidated the cases, granted Plaintiff leave to proceed *in forma pauperis*, closed Case No. 13-856, and afforded him an additional twenty-eight (28) days to supplement his consolidated complaint to demonstrate that he had exhausted administrative remedies as to his Title VII claims. (ECF No. 3).  On April 25, 2013, Plaintiff filed a timely motion for extension of time to file his supplemental complaint.  The motion was granted, extending the deadline to June 25, 2013. (ECF No. 5).  On July 5, 2013, the court dismissed the complaint without prejudice because Plaintiff did not file any supplement as directed by the court.  (ECF No. 6).

On July 22, 2013, however, Plaintiff filed a motion to stay the case while he filed an administrative appeal.  (ECF No. 7). He stated that he never received a "final order," allegedly served on him by the EEOC in June of 2013, and indicated that he wished to finalize his appeal before moving on with his federal complaint.  (*Id.*).  Attached to the motion to stay were documents purportedly served by and on the EEOC.  (ECF No. 7-1). The motion to stay made no reference to the prior dismissal of the case or to the current status of his administrative review before any EEOC Office.

Affording the self-represented Plaintiff the benefit of the doubt, on November 6, 2013, the court reopened the case and gave Plaintiff an additional thirty days to "inform the court whether

he wishes to proceed with his appeal at the EEOC or with his employment discrimination case." (ECF No. 8). He was cautioned that "if he wished to proceed with his administrative appeal process at the EEOC, he [could] not resort to the federal court process at the same time." (*Id.*).

That same day, the court received a document construed as Plaintiff's supplemental complaint. (ECF No. 9). The document provides the alleged history of Plaintiff's employment with the United States Navy and the difficulties he experienced with co-workers and supervisors starting in 1995 through 2010. Attached to the document are seventy-eight pages of materials which appear to relate to a series of interviews conducted by the Navy in 1997, Plaintiff's discrimination complaints from 1997 to 2000, a newspaper article, a series of emails from 2000, 2005, 2009 & 2010, performance appraisals, and Plaintiff's pay statements. (*See* ECF No. 9-2).

Finally, on December 5, 2013, Plaintiff filed a document labeled as a "request regarding continuance with Case No. DKC-13-846, [p]roceed." (ECF No. 10). He states that there has been no response to his notice of appeal and that several investigations have been conducted regarding his administrative complaints. He proceeds to discuss his worsening employment experiences and the difficulties he has undergone with

4

coworkers.    Plaintiff  asks  that  his  case  "go  on  with  all  due
respect."  (ECF No. 10).

On  January  30,  2014,  the  court  issued  an  order  stating:
"[t]his  court  has  generously  construed  Plaintiff's  filings  and
afforded  him  every  opportunity  to  directly  respond  to  court
directives.   At  this  late  juncture,  the  undersigned  finds  that
it  makes  sense  to  obtain  a  response  from  Defendant."  (ECF  No.
11).   The  court  directed  that  a  summons  and  complaint  be  served
on  Defendant,  and  summonses  were  issued  and  served.   (ECF  Nos.
12-15,  25).   Defendant  moved  to  dismiss  or  for  summary  judgment
on  April  3,  2014.   (ECF  No.  16).   Plaintiff  was  provided  with  a
*Roseboro*  notice  (ECF  No.  17),  which  advised  him  of  the  pendency
of  the  motion  to  dismiss  and  his  entitlement  to  respond  within
seventeen  (17)  days  from  the  date  of  the  letter.   *Roseboro v.*
*Garrison,*  528  F.2d  309,  310  (4th  Cir.1975)  (holding  *pro se*
plaintiffs  should  be  advised  of  their  right  to  file  responsive
material  to  a  motion  for  summary  judgment).   After  obtaining  an
extension  of  time,  Plaintiff  opposed  the  motion  on  May  21,  2014.
(ECF  No.  20).   Defendant  did  not  file  a  reply.

**II.  Analysis**

 **A.   Events Preceding March 2009 EEO Complaint**

As  indicated  above,  the  complaint  in  Case  No.  13-846
alleges  that  Plaintiff  was  discriminated  against  based  on
national  origin,  and  includes  as  the  only  "supporting  facts"

that "[t]he cause and/or source of past situations at work 1995-2010." (ECF No. 1, at 2). Noting that there may be exhaustion and timeliness issues with the complaint, the court – in an order issued on April 1, 2013 – directed Plaintiff to supplement his complaint to set out in a straightforward manner: (1) how he has administratively exhausted each and every claim before the appropriate federal agency; and (2) whether has filed his district court claims in a timely manner. (*See* ECF No. 3). He filed a supplement on November 6, 2013, which is a far cry from a model of clarity, does not comply with the court's clear directive, and does not include any factual allegations pertaining to his discrimination claim based on national origin. (*See* ECF No. 9).

A review of the exhibits attached to Defendants' motion reveals the following chain of events. Plaintiff filed an EEO complaint on March 11, 2009 alleging discrimination based on race, sex, and retaliation. In his complaint supplement and opposition to Defendants' motion, however, Plaintiff references events dating back to 1995, when he first began employment with the Department of the Navy. Plaintiff may not litigate his entire employment history and may not rely on any claims pertaining to prior EEO Complaint (filed before the March 2009 complaint which forms the basis of his instant suit), because those claims are time-barred. Defendant attaches the Report of

Investigation[1] in connection with the March 2009 EEO Complaint, which indicates that sometime in 1997, Plaintiff purportedly filed an EEO complaint.  Defendant supplies a declaration from D'Ontae D. Sylvertooth, Assistant Counsel in the Office of Counsel for the U.S. Department of the Navy's Bureau of Medicine and Surgery.  She declares:

> I conducted a thorough search for documents
> relating to Plaintiff's 1997 EEO complaint;
> however, due to the passage of time and the
> age of the complaint, no documents could be
> found relating to Plaintiff's 1997 EEO
> complaint.  It appears that such documents
> were destroyed consistent with the Agency's
> document retention policy, as well in accord
> with the Equal Employment Opportunity
> Commission's recordkeeping policy and
> procedure.

(ECF No. 16-11 ¶ 2).  As explained in the April 1, 2013 order, an employee may not commence a civil action in federal district court until the earlier of either the filing of a formal administrative complaint and receipt of the Final Agency Decision ("FAD"), or 180 days from the filing of the formal administrative complaint.  *See* 42 U.S.C. § 2000e-16(c); 29 C.F.R. § 1614.407.  Any civil action must be brought within 90 days of receipt of the FAD.  *See* 29 C.F.R. § 1614.407.  The deadline for filing a complaint in district court premised on a 1997 EEO complaint has long passed.  Accordingly, the scope of

---

[1] Defendant filed with the Clerk's Office a paper version of the ROI, stating that it exists only in paper format and is longer than fifty pages.  (ECF No. 16-2).

the instant lawsuit is *limited* to the claims raised in the March 2009 EEO Complaint.

**B.   Discrimination Based on National Origin**

Defendant argues that Plaintiff's discrimination claim based on national origin should be dismissed for lack of subject matter jurisdiction because he failed to exhaust his administrative remedies as to this claim.  (ECF No. 16-1, at 15-16).  Fourth Circuit precedent indicates that failure to exhaust administrative remedies under Title VII should be addressed by way of a motion to dismiss for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1).  *See Jones v. Calvert Group, Ltd.*, 551 F.3d 297, 300-01 (4th Cir. 2009) (stating that "failure by the plaintiff to exhaust administrative remedies concerning a Title VII claim deprives the federal courts of subject matter jurisdiction over the claim").  Title VII requires, and the Fourth Circuit has held, that the scope of a judicial complaint is limited to allegations in the EEOC administrative charge.  *Id.* at 300.  A Title VII lawsuit may only include "those discrimination claims stated in the initial charge, those reasonably related to the original complaint, [] those developed by reasonable investigation of the original complaint," and those contained in official amendments to the EEO complaint.  *Khoury v. Meserve*, 268 F.Supp.2d 600, 608 (D.Md. 2003) (holding that a plaintiff who took no official

action to amend her administrative charge of discrimination had not exhausted her remedies with respect to the claim not included in the original charge).   The ROI reflects that the following allegations of discrimination were accepted for investigation:   "[w]hether [Plaintiff] [was] discriminated against based on [his] race (Black), sex (Male) and retaliation (EEO Activity)."   (ROI, at page 36).   As Defendant argues, nowhere during the administrative process did Plaintiff raise a claim of discrimination based on national origin.   Accordingly, the national origin claim will be dismissed on failure to exhaust grounds.[2]

### C.   Termination

It is not at all clear whether Plaintiff attempts to rely on his termination on December 3, 2010 as a basis for discrimination or retaliation.   As set forth above, the consolidated complaint alleges discrimination on the basis of national origin (complaint in Case No. 13-846), and apparently seeks to appeal the administrative law judge decision (complaint in Case No. 13-856).   Plaintiff makes some references to his termination – albeit obliquely – in his supplemental complaint. (*See* ECF No. 9, at 5).   As explained below, Plaintiff is barred from bringing the termination into the present action as he

---

[2]   Indeed, nowhere in the pleadings does Plaintiff even identify his place of origin.

entered into a negotiated settlement agreement with the Navy related to his termination.

The Navy removed Plaintiff from his position as a computer operator effective December 3, 2010. (*See* ECF No. 9-2, at 69-73; 16-9, at 2).[3]  On December 11, 2010, Plaintiff filed an appeal of his removal with the Merit System Protection Board ("MSPB").[4]  (*See* ECF No. 16-6).  The parties reached a negotiated settlement on February 17, 2011 pertaining to Plaintiff's termination.  (*See* ECF No. 16-7).  The settlement agreement provided, in part, for Plaintiff's resignation effective February 26, 2011, in lieu of the agency's removal action.  (*Id.* at 4-8).  Plaintiff agreed to withdraw his MSPB appeal and further agreed that:

> he will file no further appeal, grievance, *civil action*, and/or complaint with the Equal Employment Opportunity Commission, Office of Special Counsel, Federal Labor Relations Authority, Office of Personnel Management, General Accounting Office, or any other Federal agency, administrative

---

[3] The notice of proposed removal from the agency, dated November 17, 2010, indicated that the proposed removal was due to: 1) inappropriate conduct by Mr. Addison in punching a coworker in the face during an altercation; 2) sleeping while on duty on at least two occasions; and 3) failure to meet a condition of employment by not obtaining his security + certification, which is a condition of employment and required for his position as a computer operator.  (ECF No. 9-2, at 69-73; *see also* ECF No. 16-5).

[4] Notably, Plaintiff did *not* assert that his removal resulted from prohibited discrimination.  (ECF No. 16-6, at 5).

> court or tribunal regarding his removal from
> the Department of the Navy's National Naval
> Medical Center [] that occurred prior to
> signing this agreement.

(*Id.* at 5) (emphasis added).[5]   29 C.F.R. § 1614.504(a) states:

"Any settlement agreement knowingly and voluntarily agreed to by

the parties, reached at any stage of the complaint process,

shall be binding on both parties."   Federal courts have held

that settlement agreements are contracts between the parties,

subject to rules of contract interpretation.   *Rock v. McHugh*,

819 F.Supp.2d 456, 466 (D.Md. 2011).   Under the terms of the

settlement agreement, Plaintiff agreed, among other things, not

to file a civil action regarding his removal from the Department

of the Navy's National Naval Medical Center.   Accordingly, any

claims premised on his removal are barred.

### D.   Remaining Discrimination Claims

Aside from his discrimination claim premised on national

origin – which he failed to exhaust for the reasons explained

above – Petitioner's only other basis for the instant lawsuit is

an appeal from the decision of Administrative Law Judge Evelyn

---

[5] The MSPB subsequently issued an initial decision dismissing Plaintiff's MSPB claim. (*See* ECF No. 16-8). Plaintiff then filed a petition for review of the settlement agreement with the MSPB, arguing that "the settlement agreement is invalid because he was innocent of the misconduct charged in the removal action and because the agency representative and his union representation had pressured him into signing the settlement agreement." (ECF No. 16-9, at 2).   The MSPB denied the petition on January 6, 2012.   (*Id.*).

Maiben concerning his March 2009 EEO complaint. Defendant first argues that the consolidated complaint should be dismissed because "Defendant is simply unable to ascertain from Plaintiff's consolidated complaint or any of his supplemental pleadings what he is alleging constitutes discrimination." (ECF No. 16-1, at 9). Defendant also denies the allegations, (*id.* at 11), but the allegations must be taken as true at the motion to dismiss stage. Although Defendant is correct that Plaintiff's consolidated complaint and supplement do not elucidate the precise claims Petitioner asserts, considering Plaintiff's *pro se* status, the court will construe the pleading as asserting race and sex discrimination, and retaliation, which are the claims raised in the March 2009 EEO complaint which the ALJ adjudicated and from which Plaintiff "appeals." *See Scott v. Johanns,* 409 F.3d 466, 469 (D.C. Cir. 2005) ("In a Title VII suit brought after a final administrative disposition finding no discrimination, the district court considers the discrimination claim de novo." (*quoting Chandler v. Roudebush,* 425 U.S. 840 (1976)). Although in his complaint supplement and opposition to Defendant's motion, Petitioner chronicles many alleged wrongdoings by his employer, the scope of the complaint necessarily is limited to the claims raised in the March 2009 EEO complaint.

Defendant has moved to dismiss or for summary judgment.

Ordinarily, a court cannot consider matters outside the pleadings or resolve factual disputes when ruling on a Rule 12(b)(6) motion. *See Bosiger v. U.S. Airways,* 510 F.3d 442, 450 (4th Cir. 2007). If the court does consider matters outside the pleadings, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed.R.Civ.P. 12(d); *see also Finley Lines Joint Protective Bd. Unit 200 v. Norfolk S. Corp.,* 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials."). It is appropriate to consider the extraneous materials submitted by Defendant, and Plaintiff had notice by virtue of the motion filed by Defendant. *See Warner v. Quilo,* No. ELH-12-248, 2012 WL 3065358, at *2 (D.Md. July 26, 2012) ("When the movant expressly captions its motion 'in the alternative' as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur[.]") (*quoting Laughlin v. Metro. Wash. Airports Auth.,* 149 F.3d 253, 261 (4th Cir. 1998)). Accordingly, Defendant's motion

shall be treated as a motion for summary judgment.

    **1.   Standard of Review**

Rule 56(a) of the Federal Rules of Civil Procedure provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).  The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (*quoting* Fed.R.Civ.P. 56(e)).  The court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in [his] favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir.

2002).   At the same time, the court also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat,* 346 F.3d at 526 (*quoting Drewitt v. Pratt,* 999 F.2d 774, 778-79 (4th Cir. 1993)) (internal quotation marks omitted) (*citing Celotex Corp. v. Catrett,* 477 U.S. 317, 323-24 (1986)).

### 2.   Analysis

Defendant argues that Plaintiff has failed to establish a *prima facie* case of discrimination or retaliation. (*See* ECF No. 16-1, at 21).   To survive a motion for summary judgment, a plaintiff making Title VII claims must provide evidence of intentional discrimination, which includes acts of retaliation, through one of two avenues of proof:   (1) direct or circumstantial evidence that protected status or retaliation motivated the employer's adverse employment decision, or (2) the *McDonnell Douglas* "pretext framework" that requires a plaintiff to show that "employer's proffered permissible reason for taking an adverse employment action is actually a pretext for [discrimination or retaliation]."   *Hill v. Lockheed Martin Logistics Management, Inc.,* 354 F.3d 277, 284-85 (4th Cir. 2004) (*citing McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)).   Under the *McDonnell Douglas* framework, once the plaintiff meets his initial burden of establishing a *prima facie* case for discrimination or

retaliation, "the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action." *Hill,* 354 F.3d at 285. Once the employer meets this burden of production, "the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the employer's stated reasons 'were not its true reasons, but were a pretext for discrimination.'" *Id.* (*quoting Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 143 (2000)). "The final pretext inquiry merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination, which at all times remains with the plaintiff." *Merritt v. Old Dominion Freight Line, Inc.,* 601 F.3d 289, 294 (4th Cir. 2010) (internal quotation marks omitted).

   **a.   Race and Gender Discrimination**

The following allegations of discrimination were investigated by the EEO:

> Whether Plaintiff was discriminated against based on race, sex, and retaliation when:
>
>    1) On November 11, 2008, his arrival and departure times were altered;
>
>    2) On November 11, 2008, his arrival and departure times were observed by his manager;
>
>    3) On January 4, 2009, he was issued a five (5) day suspension  from January 4 to January 8, 2009, for sending out an email message; and

> 4) In February 2009, he became aware
> that he was denied a reassignment to the
> night shift.

(ROI, at p. 36; *see also* ECF No. 16-3, at 2).  Plaintiff has

presented no direct evidence to support his claims of race and

gender discrimination.  His consolidated complaint, supplement,

and his opposition provide no direct evidence that any of the

above actions were taken as a result of his protected status.

Thus, the race and gender discrimination claims must be examined

using the *McDonnell Douglas* burden-shifting framework.

An employee establishes a *prima facie* case of disparate

treatment on the basis of race and gender discrimination under

Title VII by showing that: (1) he is a member of a protected

class; (2) his job performance was satisfactory; (3) he was

subjected to an adverse employment action; and (4) similarly

situated employees outside of his class received more favorable

treatment.  *See Holland v. Washington Homes, Inc.*, 487 F.3d 208,

214 (4th Cir. 2007).  Defendant argues that some of the incidents

cited by Plaintiff do not constitute adverse employment actions.

The Fourth Circuit has explained: "[a]n adverse employment

action is a discriminatory act that adversely affects the terms,

conditions, or benefits of a plaintiff's employment."  *Holland*

*v. Washington Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007)

(internal quotation marks, citation, and alterations omitted).

The Fourth Circuit has described an "adverse employment action"

17

as one that "'constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 337 (4th Cir. 2011) (*quoting Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)). Plaintiff has not established that the altering or monitoring of his arrival and departure times constitute adverse employment actions, as these actions did not affect the terms, conditions, or benefits of Plaintiff's employment. *See, e.g., Thorn v. Sebelius*, 766 F.Supp.2d 585, 598 (D.Md. 2011) ("'Although conduct short of ultimate employment decisions can constitute adverse employment action, there still must be a tangible effect on the terms and conditions of employment.'" (*quoting Geist v. Gill/Kardash P'ship*, 671 F.Supp.2d 729, 737 n.6 (D.Md. 2009)).

As for the denial of a reassignment, Plaintiff was asked why he believed his request for reassignment to the night shift was denied because of his race, sex, and prior EEO activity, to which he responded: "[b]ecause of my past EEO complaint." (ROI, at 51). Thus, Plaintiff does not appear to be attributing the reassignment denial to his race or gender. In any event, Plaintiff has not established that the denial of his reassignment to the night shift had a significant detrimental effect on his employment status to constitute an adverse

employment action.    Moreover, Defendant has offered a legitimate

nondiscriminatory reason for this action.    Jose Angel Izquierdo,

Service   Support   Supervisor   with   the   National   Naval   Medical

Center, stated that Plaintiff never submitted a formal request

to be reassigned to night shift.    (*Id.* at 444).    Mr. Izquierdo

further explained:

> [Plaintiff] was not denied reassignment to
> the night shift.    During this period we had
> hired a new staff member, I [] instructed
> Mr. Miller that I wanted to ensure that the
> new member worked in all shifts, to include
> night and weekends to learn all the required
> duties.    Upon completion of the rotation we
> would re-evaluate who would work what shift.
> *As it is, both [Plaintiff] and Mr. Nguyen
> are currently on nights.*

(*Id.* at 444) (emphasis added).    Plaintiff has not provided any

evidence   that   Defendant's   stated   reason   for   denial   of

reassignment was pretextual.

As for the five-day suspension, Defendant concedes that

this action constitutes an adverse employment action, but argues

that   Plaintiff   has   not   established   that   he   was   treated

differently in this regard than employees outside of the

protected class.    (ECF No. 16-1, at 22).    The administrative

record reflects that there were seven individuals employed in

the Operations Branch – the group in which Plaintiff was

employed - with the following demographics: 5 males and 1

female; 5 African Americans, 1 Caucasian, and 1 Filipino.    (*See*

ROI, at 172).    Plaintiff asserts that he was suspended for

sending an incorrect "postmaster," which is an email directed by

the Board of Directors to be released to the Command for

informational purposes.    Plaintiff apparently made mistakes in

sending out a postmaster, but Plaintiff attributes this to a

lack of training, and also asserts that other people in his

group also made mistakes but were not suspended.    (*Id.* at 46-

47).    The administrative record reflects that three other

computer operators (two African American, and one Filipino) were

suspended for the same purported infraction as Plaintiff,

however.    (*Id.* at 129).

Based on the foregoing, his race and gender discrimination

claims cannot survive summary judgment.

### b.    Retaliation

Plaintiff also alleged retaliation in his March 2009 EEO

complaint.    Title VII makes it unlawful for "an employer to

discriminate against any of [its] employees . . . because he has

opposed any practice made an unlawful practice by this

subchapter, or because he has made a charge, testified,

assisted, or participated in any manner in an investigation,

proceeding, or hearing under this subchapter."    42 U.S.C. §

2000e-3(a).    To establish a *prima facie* case of retaliation

under Title VII, a plaintiff must show that:    (1) he engaged in

a protected activity, (2) an adverse employment action was taken

against him, and (3) the protected activity was causally connected to the adverse action. *See Holland v. Washington Homes, Inc.,* 487 F.3d 208, 218 (4th Cir. 2007) (*citing Beall v. Abbott Labs.,* 130 F.3d 614, 619 (4th Cir. 1997)).  Unlike a discrimination claim, a plaintiff need not establish an "ultimate employment decision" to make out his *prima facie* case; rather, he must show only that the action would be seen as materially adverse through the eyes of a reasonable employee. *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 68 (2006).  Actions like "petty slights, minor annoyances, and simple lack of good manners" are insufficient to support a retaliation claim, even under this lower standard.  *Id.*

Because Plaintiff has presented no direct evidence of retaliation, his claim will be analyzed under the *McDonnell Douglas* framework.  When asked whether he ever participated in any protected activity, the only protected activity Plaintiff identified was from 1995 through 1998.  (*See* ROI, at 44).  The Fourth Circuit has held that "a causal connection for purposes of demonstrating a *prima facie* case exists where the employer takes adverse employment against an employee shortly after learning of the protected activity." *Price v. Thompson,* 380 F.3d 209, 213 (4th Cir. 2004).  Conversely, a longer passage of time "tends to negate the inference of discrimination." *Id.*

As discussed above, aside from the five-day suspension, none of the other actions – including alteration and observation of his arrival and departure times and denial of reassignment to night shift – constitute adverse employment actions. Even assuming all the actions complained about were adverse employment actions, the gap in time between the prior EEO activity in 1998 and the alleged retaliation – nearly ten years – is far too remote to infer causation. *See Pepper v. Precision Valve Corp,* 526 F.App'x 335, 337 (4th Cir. 2013) ("[A] causal connection for purposes of demonstrating a prima facie case exists where the employer takes adverse employment action against an employee shortly after *learning of* the protected activity." (alteration in original) (emphasis added) (internal citation and quotation marks omitted)). Accordingly, Plaintiff has not established a causal connection between Defendant's actions and his earlier filing of an EEO complaint, and summary judgment will be granted to Defendant on the retaliation claim.

## III. Conclusion

For the foregoing reasons, the motion filed by Defendant will be granted. A separate order will follow.

/s/
_____
DEBORAH K. CHASANOW
United States District Judge